JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

**13    1101**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

U. S. Securities and Exchange Commission

**DEFENDANTS**

Falcon Ridge Development, Inc. and
Fred M. Montano

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bernalilo County ___
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott A. Thompson, Esquire
Securities and Exchange Commission
701 Market St., Ste. 2000, Philadelphia, PA 19106 (215) 597-3100

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS— Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 77q(a)(1) and 78j(b) and 17 C.F.R. § 240.10b-5

Brief description of cause:
Violation of Securities Laws: Market Manipulation

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE  Hon. Gene E.K. Pratter   DOCKET NUMBER  13-CR-00082-GPL

DATE
3/1/2013

SIGNATURE OF ATTORNEY OF RECORD
*S. A. Thompson*   Scott A. Thompson

MAR 0 1 2013

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

GP 13 1101 13-CV-1101

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 701 Market Street, Suite 2000, Philadelphia, PA 19106

Address of Defendant: 5111 Juan Tabo N.E. Albuquerque, N.M. 87111 and 12512 MODESTO AVE ALBUQUERQUE, NM 87122

Place of Accident, Incident or Transaction: Eastern District of Pennsylvania
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                    Yes□   No X

Does this case involve multidistrict litigation possibilities?                                                 Yes□   No X
*RELATED CASE, IF ANY:*
Case Number: 13-CR 00092-GP2   Judge Hon. Gene E.K. Pratter   Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                                               Yes□   No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                                                              Yes□   No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                                                   Yes X   No□

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                                               Yes□   No X

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. □ Civil Rights
8. □ Habeas Corpus
9. X Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability -  Asbestos
9. □ All other Diversity Cases
    (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

MAR 0 1 2013

I, Scott A. Thompson , counsel of record do hereby certify:
□ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
X Relief other than monetary damages is sought.

DATE: 3/1/2013            *Scott A Thompson*  Scott A. Thompson                    90779
                          Attorney-at-Law                                         Attorney I.D.#
NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/12013            *Scott A Thompson*  Scott A. Thompson                    90779
                          Attorney-at-Law                                         Attorney I.D.#
CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| U.S. Securities and Exchange Commission | : | CIVIL ACTION |
| | : | |
| v. | : | **13    1101** |
| | : | |
| Falcon Ridge Development, Inc. and Fred M. | : | |
| Montano | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security · Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| 3/1/2013 | _Scott A. Thompson_ | Plaintiff |
| **Date** | Scott A. Thompson | |
| | **Attorney-at-law** | **Attorney for** |
| (215) 597-3100 | (215) 597-2740 | thompsons@sec.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



MAR 0 1 2013



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FILED

MAR 1 2013

.....UNZ, Clerk
.....Dep. Clerk

---

SECURITIES AND EXCHANGE COMMISSION,   :

      Plaintiff,   :

    v.   :

FALCON RIDGE DEVELOPMENT, INC. and   :
FRED M. MONTANO,   :

      Defendants.   :

---

Civil Action No.

**13**   **1101**

### COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### SUMMARY

1. This matter involves the market manipulation of the common stock of Falcon Ridge Development, Inc. ("Falcon Ridge"), a micro-cap company.

2. From at least August 2008 through November 2008, Falcon Ridge and its President and Chief Executive Officer, Fred M. Montano, engaged in a fraudulent scheme to manipulate the market for Falcon Ridge's common stock.

3. Specifically, Montano paid a kickback to the Cooperating Witness ("CW"), an individual whom he believed had connections to corrupt registered representatives, in exchange for generating or causing purchases of Falcon Ridge common stock. In reality, the CW was, at all times, cooperating with the Federal Bureau of Investigation ("FBI").

4. In furtherance of the scheme, Montano paid $1,000 to cause the purchase of 625,000 shares of Falcon Ridge common stock by the CW, in part, through a matched trade – a trade arranged and designed to be executed between the CW and Montano (but to falsely appear to the public as a market driven transaction) that would ensure that Montano received proceeds from the



CW's directed purchase.  Montano made the payment to generate stock purchases and to create the false appearance of market interest in Falcon Ridge, induce public purchases of its stock, and ultimately increase the stock's trading price.

## VIOLATIONS

5.      As a result of the conduct described in this Complaint, Defendants Falcon Ridge and Montano violated, and unless restrained and enjoined by the Court will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## JURISDICTION AND VENUE

6.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking permanently to enjoin Defendants from engaging in the acts, transactions, practices and courses of business alleged in this Complaint.

7.      The Commission seeks a final judgment ordering Falcon Ridge and Montano to disgorge all ill-gotten gains, together with prejudgment interest thereon.

8.      The Commission seeks a final judgment ordering Falcon Ridge and Montano to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

9.      The Commission seeks a penny stock bar pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] against Montano.

10.     The Commission seeks a final judgment barring Montano from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act, and Section 21(d)(2) of the Exchange Act.

11.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

12.     Venue in this District is proper pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act, because certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Eastern District of Pennsylvania. For example, the CW was present within the Eastern District of Pennsylvania for some, if not all of the telephone calls described below, and Montano wired a kickback payment to a bank account within the Eastern District of Pennsylvania.

13.     The Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

## DEFENDANTS

14.     **Falcon Ridge Development, Inc**. is a New Mexico real estate company, with its headquarters in Albuquerque, New Mexico.

15.     **Fred M. Montano**, age 60, is a resident of Albuquerque, New Mexico. He is the Chairman, CEO and President of Falcon Ridge.

3

## FACTS

### Falcon Ridge

16.     At all times relevant to the facts alleged in this Complaint, Falcon Ridge acted by and through Montano.

17.     Falcon Ridge describes itself as a "new breed" real estate company that builds environmentally-responsible communities. At all times relevant to the Complaint, Falcon Ridge's securities publicly traded on the OTC Link under the symbol "FCNR." Its common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act.

18.     At all times relevant to the facts alleged in the Complaint, Falcon Ridge qualified as a penny stock as defined by Rule 3a51-1 of the Exchange Act, and did not meet any exceptions to that rule.

### The Manipulative Scheme

19.     Beginning at least as early as August 2008, Defendant Montano orchestrated and directed a scheme to manipulate the market for Falcon Ridge stock. He did this in various ways, including: a) entering into an illegal agreement to orchestrate trading activity to create the false impression of increased legitimate market activity and demand for Falcon Ridge stock; b) engaging in, directing, or causing manipulative and deceptive securities transactions, through the payment of an illicit kickback, to artificially increase Falcon Ridge's stock price and volume; c) by directing or executing a matched trade; and d) causing Falcon Ridge to issue press releases coordinated with the fraudulent trading activity to provide a false pretext for the increased trading volume and to induce public investors to also make purchases of Falcon Ridge stock.

20.     A "matched trade" is an order to buy or sell securities that is entered with knowledge that a matching order on the opposite side of the transaction has been or will be entered for the

purpose of (1) creating a false or misleading appearance of active trading in any publicly traded security or (2) creating a false or misleading appearance with respect to the market for any such security.

21.   Through these activities, Montano created artificial trading activity, injected artificial information into the marketplace, and created a false impression of supply and demand for Falcon Ridge stock.

22.   Between August 2008 and November 2008, Defendant Montano participated in several telephone conversations with the CW in which he described his intent and confirmed his involvement in orchestrating the manipulation of Falcon Ridge's common stock through the payment of illegal kickbacks in exchange for the purchase of shares on the open market.

23.   Specifically, on or about August 30, 2008, the CW and Montano had a conversation discussing the details of the proposed illegal "buying campaign." The CW told Montano that he could arrange for the manipulation of Falcon Ridge's stock through his nationwide network of corrupt brokers who could purchase and hold stock for an extended period of time in exchange for a 20 percent fee. The CW told Montano that he would collect the 20 percent fee from Montano after the purchases were completed.

24.   On or about September 24, 2008, the CW and Montano again discussed the scheme to manipulate the market for Falcon Ridge's stock. The CW told Montano that he was prepared to conduct a $5,000 test buy of Falcon Ridge's stock in exchange for the payment of $1,000. In order to maximize the effectiveness of the buying program, Montano told the CW he wanted the CW to coordinate his buying program with the implementation of Falcon Ridge's employee stock option plan. Montano explained that once the CW's buying program started, he intended to have Falcon Ridge's employees exercise their employee options and then sell the stock through a designated

broker. Montano wanted the CW, through his network of brokers, to purchase these shares on the open market. According to Montano, the Falcon Ridge employees who exercised their options would be required to pay Montano 85 percent of the proceeds realized from the stock they sold to the CW's purported network of brokers as part of the buying program.

25.    On or about October 10, 2008, Montano emailed the CW a list of shareholder positions in Falcon Ridge. The report contained information regarding ownership positions and outstanding shares of Falcon Ridge's stock as of September 30, 2008. The purpose in providing this report to the CW was to demonstrate that Montano knew where the outstanding shares were held and that he could exercise control over the unrestricted, publicly tradable shares of Falcon Ridge.

26.    On or about October 13, 2008, Montano confirmed to the CW that Falcon Ridge would orchestrate a "directed buy" or matched trade, as the test trade. Montano explained that by matching the trade to an account with stock under his control, it would ensure that Montano would receive the proceeds from the test purchase made by the CW, enabling Montano to use the proceeds to then pay the CW his "well-deserved fee."

27.    As part of the scheme, Montano and the CW also discussed the need to issue press releases to provide a false pretext to explain the higher than normal trading volume that would result from the illegal scheme. Accordingly, on or about October 23, 2008, Montano emailed the CW an unreleased advance copy of a press release describing how Falcon Ridge was well-positioned to take advance of the recent downturn in the housing market. In the email, Montano stated his intention to publish the release on the day of the test trade.

**Execution of the Test Trades**

28.    Leading up to the execution of the test trades, on October 24, 2008, the CW sent an email to Montano stating that he had received the press release, and would conduct the test buy on

6

October 27, 2008.  Montano responded, "[g]reat," and told the CW that he would provide him with the information the CW needed to arrange the matched trade of Falcon Ridge's stock.

29.     On or about October 27, 2008, Montano sent the CW a second nonpublic news release, which claimed that Falcon Ridge was poised to benefit from the anticipated influx of new employees to Southern New Mexico.

30.     On or about October 28, 2008, at 6:19 p.m., Montano sent the CW an email stating that the news would be released the next morning.

31.     On or about October 29, 2008, Montano called the CW and told him to purchase Falcon Ridge stock at $ .008 per share.  The CW then confirmed with Montano that, at 2:00 p.m., he would execute a $5,000 purchase at $ .008 per share.

32.     In accordance with the prearranged agreement, on or about October 29, 2008, the FBI purchased 625,000 shares of Falcon Ridge stock at $0.0076 per share, for a total of $4,750. Montano successfully matched 100,000 out of the 625,000 shares purchased by the FBI and realized approximately $800 in proceeds.  Montano accomplished this by arranging for the sale of the Falcon Ridge shares through a brokerage account held in the name of an employee.  Montano, however, was unsuccessful in his attempt to match the remaining shares that were part of the test trade.  The 625,000 shares traded represented 97 percent of that day's trading volume.

33.     On or about October 31, 2008, the CW emailed Montano the wire instructions for his $1,000 payment.  During a telephone call on or about October 31, 2008, Montano told the CW that he would wire the funds as soon as possible.  During the same call, Montano expressed his frustration to the CW about being unable to match the entire test purchase, but confirmed that he had realized $800 in profits from the FBI's $5,000 purchase.  Montano also asked the CW when the buying campaign would begin because he needed to ensure that enough stock was available for the

sale. Montano also told the CW that he remained undecided whether the CW should conduct a $4 million or $8 million buying program.

34.     During a telephone call on or about November 3, 2008, Montano told the CW that the wire payment for the Falcon Ridge test buy was on its way. As promised, shortly thereafter, Falcon Ridge's vice president wired $1,000 from an account held at Bank of the West to an FBI controlled bank account in Philadelphia. The description on the $1,000 wire transfer referenced "TRADES-FALCON RIDGE."

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a)(1) of the Securities Act

35.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 34, inclusive, as if the same were fully set forth herein.

36.     As described in this Complaint, Defendants Falcon Ridge and Montano, knowingly or recklessly, directly or indirectly, in the offer and sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce, or by the use of the mails, employed devices, schemes or artifices to defraud.

37.     By engaging in the foregoing conduct, Defendants Falcon Ridge and Montano violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5, thereunder

38.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 37, inclusive, as if the same were fully set forth herein.

8

39.     From at least August 2008 through November 2008, Defendants Falcon Ridge and Montano knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange:

(a)     employed devices, schemes or artifices to defraud; and/or

(b)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

40.     By engaging in the foregoing conduct, Defendants Falcon Ridge and Montano violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants Falcon Ridge and Montano from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## II.

Ordering Falcon Ridge and Montano to disgorge any and all ill-gotten gains, together with prejudgment interest, derived from the activities set forth in this Complaint.

## III.

Ordering Falcon Ridge and Montano to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C.§ 78u(d)(3)].

## IV.

Prohibiting Montano, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## V.

Prohibiting Montano from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)].

## VI.

Granting such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

*Scott A Thompson*

Daniel M. Hawke
Elaine C. Greenberg
Brendan P. McGlynn (#77271)
Scott A. Thompson (#90779)
Lisa M. Candera

Attorneys for Plaintiff:

**SECURITIES AND EXCHANGE COMMISSION**
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, PA  19106
Telephone: (215) 597-3100
Facsimile: (215) 597-2740

Dated:  March 1, 2013